Brinkerhoff, J.
An alternative writ of mandamus having issued in this ease, and been returned, a motion is now made for a peremptory writ, the object of which is to compel the defendant, as governor, to issue to the relator a commission as probate judge of the county of Wyandot, to which he claims to have been entitled from the 9th of February, 1858.
The facts of the case appear in the answer of the defendant, where they are stated as follows:
“At the general election on the second Tuesday of October, 1851, in the said county of Wyandot, Joseph Kinney and Robert McKelley received an equal number of votes for the office of judge of probate. There being no election, but a tie, lots were cast to decide the result, which proved favorable to Joseph Kinney, who thereupon received a certificate to that effect.
“Remonstrances having been filed against issuing a commission tó Kinney, the then attorney-general of the State of Ohio, Joseph McCormick, called the attention thereto of the then governor, Reuben Wood, and intimated a decided opinion that the determination by lot was void; and thereupon, on the 12th February, 1852, Robert McKelley was appointed by the said governor, judge of probate for the county of Wyandot, until the second Tuesday of October, 1852, and a commission in due form was issued to him accordingly, under which the said McKelley held the said office until the 30th day of October, 1852, as hereinafter stated.
“At the general election on the second Tuesday of October, 1852, Joseph Kinney and Robert McKelley were again candidates for the office of probate judge, and Joseph Kinney having received the highest number of votes, was declared duly elected, and received the proper certificate. He was accordingly, on the 30th of October, *337 1852, commissioned as probate judge of the county of Wyandot, by-Reuben Wood, then governor, for the term of three years, and under that commission and election the *said Kinney held said office until his re-election and commission, as hereinafter stated.
“At the general election held on the said second Tuesday of October, 1855, Joseph Kinney and Jonathan Maffett were candidates for the said office, and Joseph Kinney having received the-highest number of votes was declared duly elected, and received the proper certificate. He was accordingly commissioned by this defendant, as the governor of the State of Ohio, for a second term of three years, on the 9th of February, 1856, and under that election, hath since continued to and doth still hold the said office.
“Two years afterward, at the general election on the second-. Tuesday of October, 1857, before the expiration of the second term-for which Joseph Kinney had been already commissioned, votes-were cast for William A. Knibloe and Jonathan Maffett as candidates for the said office of probate judge, of which Jonathan Maffettreceived the highest number and was declared duly elected, and received a certificate accordingly from the clerk of the county.
“Application being made to this defendant as governor of the-State of Ohio, to issue a commission to the said Jonathan Maffett, he declined to do so, having already issued a commission for the same office, on the 9th of February, 1856, to Joseph Kinney, for a. term of three years, which term had not then expired.”
From this statement of the facts, it is apparent that this case-turns entirely on the single question, whether the first regularly elected incumbent of the office of probate judge of Wyandot county,, under the election of 1852, was legally commissioned for the term, of three years? If he was, then the commission subsequently issued for the like term under the election of 1855, was regular and legal; the term of office of the judge then commissioned has not yet expired; and the election of 1857, under which the relator claims, was. premature and void, unless we admit the proposition, that an election for the office might be legally held more than a year in advance of any accruing vacancy; an idea which, it seems to me, in the absence of any express statute to warrant it, is wholly inadmissible.
*The seventh section of the fourth article of the constitution is as follows :
“ There shall be established in each county a probate court,, which shall be a court of record, open at all times, and holden by *338 one judge, elected by the voters of the county, who shall hold his •office for the term of three years, and shall receive such compensation, payable out of the county treasury, or by fees, or both, as shall be provided by law.”
This is the primary provision of the constitution in respect to the office of probate judge. The regular and normal condition of the office is, that it shall be held for the term of three years.
Now, what are the exceptions to this rule? and do they apply to the case of the present incumbent here sought to be ousted ?
The thirteenth section of the same article of the constitution is as follows :
“ In case the office of any judge shall become vacant, before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor until a successor is elected and qualified; and such successor shall be elected for the unexpired term, at the first annual election that occurs more than thirty days after the vacancy shall have happened.”
Here is an exception undoubtedly. Does it apply to this case? “ Such successor shall be elected for the unexpired term.” In the ease before us there was no “unexpired term.” There never had been any election. The attempt to elect had resulted in a tie vote and failed. There never had been in that county a regular term begun, which could either expire or remain “ unexpired.”
Moreover, the “vacancy” mentioned in the first clause of this •section is not a vacancy which results from a previous failure to •elect, but a vacancy which arises “ before the expiration of the regular term of which he (a prior incumbent of the office) was elected.” Such “vacancy shall be filled by appointment by the governor until a successor is elected and qualified ; and such sue-. ■cessor shall be elected for the unexpired term.”
It is evident that the case specifically provided for in this section *of the constitution is not the case before us. That section has, in terms, no application to the present question.
Again, the fourth.section of the schedule to the constitution provides as follows :
“ The first election for judges of the Supreme Court, courts of common pleas, and probate courts, and clerks of the courts of common pleas, shall be held on the. .second Tuesday of October, one thousand eight hundred and fifty-one; and the official term of said *339 judges and clerks, so elected, shall commence on the second Mon* day of tebruary, one thousand eight hundred and fifty-two
The language of this clause of the schedule is very clear and explicit. It provides that the first election of judges shall be held on the second Tuesday of October, 1851, and the official term of judges, “so elected,” shall commence on the second Monday of February following. It does not, in terms, apply to cases where there is a failure to elect on the second Tuesday of October, 1851, nor to cases which may arise from the Creation of new counties at such times as to throw the official terms of their probate judges out ■of line with those of the probate judges in the other counties of the state.
The constitution having provided for the formation of new counties, and omitted any provision by which the regular terms of office of probate judges of such counties should be made always to commence and end contemporaneously with those of the like officers in the old counties generally, it is not to be presumed that uniformity in this respect was deemed by its framers of such importance as to justify us in attempting to extend, by construction, the literal purport of the explicit language which they have employed. Nor, so far as we perceive, is there any great public convenience, or object of state policy, to be attained by securing such a result.
We conclude, therefore, that the commission, under the election of 1852, to the first probate judge elected in Wyandot county, was properly issued for the full term of three years ; and so likewise on his re-election in 1855 ; and that consequently there *was no accruing vacancy to be filled by election in the fall of 1857.
In our conclusions in this respect, it will be perceived, we are in harmony with the uniform practice of the executive department' of the government under the present constitution, and with the construction which that department has given to those sections of the constitution which have a bearing on the question. It was the duty of that executive to pass upon the question in the first instance, and we are gratified that our investigations have resulted in a coincidence of opinion.

Motion overruled.

Bartley, C. J., and Swan, Soott, and Sutlxee, JJ., concurred.